**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RODNEY HONTZ,                          :
                                       :
                    Plaintiff,         :    CIVIL ACTION
                                       :
        v.                             :    NO. 12-cv-2663
                                       :
BERKS COUNTY PRISON, ET AL.,           :
                                       :
                    Defendants.        :

<u>**MEMORANDUM & ORDER**</u>

**Joyner, C. J.**                              **October 18, 2012**

     Before this Court are the Medical Defendants' Motion to
Dismiss (Doc. No. 16), the Plaintiff's response thereto (Doc. No.
27), County Defendants' Motion to Dismiss (Doc. No. 19), and the
Plaintiff's response thereto (Doc. No. 25).  For the reasons set
forth in this Memorandum, the Court will grant both Defendants'
Motions to Dismiss, with leave for the Plaintiff to amend as to
his ADA claim.

## I.  FACTUAL & PROCEDURAL BACKGROUND

     This action arises from the time that the Plaintiff, Rodney
Hontz, spent at Berks County Prison in 2010.  According to the
Plaintiff, on March 18, 2010, he entered the Berks County Prison
and was placed in the Medical Unit for monitoring because of a
suicide attempt prior to his arrest.  About a month later, he was
moved to the general population.  He then submitted his name for
a food service position in the prison kitchen, which was denied.

1

He submitted a grievance regarding this denial, to which he never received a response.  He was then visited by a nurse with PrimeCare Medical, who showed the Plaintiff a form stating that he had Hepatitis C.  The nurse told him that the Hepatitis C was the reason he could not work in the kitchen.

The Plaintiff was transferred to state prison on July 20, 2010.  There, he was medically cleared to work in the prison kitchen, and was told that inmates with Hepatitis C were permitted to work in the prison kitchen because Hepatitis C is not transmitted through food service.

The Plaintiff, acting *pro se*, filed his Complaint on May 16, 2012.  (Doc. No. 1).  The Defendants he named in the Complaint can be categorized as "County Defendants" and "Medical Defendants."  The County Defendants named are: Berks County Prison, Warden George Wagner, County Commissioners Kevin S. Barnhart, Christian Y. Lienbach and Mark C. Scott, and Berks County Prison Food Service Supervisor.  The Medical Defendants named are: PrimeCare Medical, Inc., Berks County Prison Health Services Administrator, and Berks County Prison Medical Director.[1]  In the Complaint, the Plaintiff seeks the following

---

[1] On August 9, 2012, the Plaintiff filed a Motion to File an Amended Complaint.  He seeks to add as a Defendant the Assistant Corporate Director of PrimeCare, who would be a Medical Defendant, and sue the Medical Defendants in their correct capacity.  The Plaintiff also seeks to add to the Complaint that the Defendants must have a policy for inmates in food service pursuant to 37 Pa. Code § 95.230(4).  Because, for the reasons stated in this Memorandum, all claims against the Medical Defendants and the Equal Protection Claims that would require statement of such a policy have been dismissed with prejudice, the Court will deny this motion by separate order.

relief: declaratory judgment for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Equal Protection Clause of the Fourteenth Amendment; injunctive relief to remedy these violations; compensatory damages for the ADA and Equal Protection violations; and punitive damages for the Equal Protection violation.

## II.  STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Krantz v. Prudential Invs. Fund Mgmt., 305 F.3d 140, 142 (3d Cir. 2002) (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice.  Id.  Rather, a

3

plaintiff must allege some facts to raise the allegation above the level of mere speculation.  Great Western Mining & Mineral Co. V. Fox Rothschild LLP, 615 F.3d 159, 176 (3d Cir. 2010) (citing Twombly, 550 U.S. at 555).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  "When presented with a *pro se* litigant, [the Court has] a special obligation to construe his complaint liberally."  Higgs v. Attorney General of the United States, 655 F.3d 333, 339 (3d Cir. 2011) (citations omitted).  "Thus, even if a *pro se* plaintiff's claims are not set out in the clearest fashion, the Court is obligated to discern all the possible claims that the Plaintiff may be alleging."  Thomas-Warner v. City of Phila., 2011 U.S. Dist. LEXIS 146029, at *10 (E.D. Pa. Dec. 20, 2011).  However, in doing so the Court still determines whether *pro se* plaintiffs have alleged sufficient facts to support the claims divined from the pleadings.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Moreover, "[a]lthough the Court must accept well-pleaded facts as true, it need not credit

bald assertions or legal conclusions." <u>In re Burlington Coat</u>
<u>Factory Sec. Litig.</u>, 114 F.3d 1410, 1429 (3d Cir. 1997).

## <u>III.  DISCUSSION</u>

### <u>A.  Plaintiff's Claims for Declaratory and Injunctive Relief</u>

In his Complaint, the Plaintiff seeks declaratory judgment
and injunctive relief for the alleged denial of food service work
due to Hepatitis C.  (Compl., at 5-6, Doc. No. 1).  The County
Defendants argue that because the Plaintiff is no longer confined
in Berks County Prison, having been transferred to a state
correctional facility, these claims must be dismissed as moot.
(Mem. of Law in Supp. of Mot. to Dismiss, at 16, Doc. No. 19).
In response, the Plaintiff argues that the claims fall within an
exception to the mootness doctrine because they are capable of
repetition yet evading review.  (Mot. in Opp. to Defs.' Mot. to
Dismiss, at 8, Doc. No. 25).  The Plaintiff argues that he is
likely to be returned to Berks County Prison if he violates the
terms of his parole in the future, and therefore the alleged
constitutional violations could reoccur.  (<u>Id.</u>).

It is well established that Article III of the Constitution
limits federal courts to the adjudication of live and actual
controversies between litigants.  <u>DeFunis v. Odegaard</u>, 416 U.S.
312, 316 (1974).  A case becomes moot "when the issues presented
are no longer live or the parties lack a legally cognizable
interest in the outcome." <u>Powell v. McCormack</u>, 395 U.S. 486, 496

(1969).  The capable of repetition yet evading review exception
to the mootness principle is limited to cases where the
challenged action was too short in duration to be fully litigated
prior to its cessation or expiration and where there is a
reasonable likelihood that the same complaining party would be
subjected to the same action again.  <u>Abdul-Akbar v. Watson</u>, 4
F.3d 195, 206 (3d Cir. 1993) (quoting <u>Weinstein v. Bradford</u>, 423
U.S. 147, 149 (1975)).

The Court declines to accept the Plaintiff's argument that
his case is capable of repetition yet evading review because of
the likelihood that he will violate parole and be returned to
Berks County Prison.  "Such conjecture as to the likelihood of
repetition has no place in the application of this exceptional
and narrow grant of judicial power." <u>Abdul-Akbar</u>, 4 F.3d at 207.
Therefore, because the Plaintiff is no longer confined at Berks
County Prison and not subject to the condition that he
challenges, the Court dismisses his claims for declaratory
judgment and injunctive relief as moot.

   B.  <u>Plaintiff's Claims Under the Equal Protection Clause</u>

The Plaintiff asserts in the Complaint that the Defendants'
actions violated his rights under the Equal Protection Clause of
the Fourteenth Amendment.  (Compl., at 5, Doc. No. 1).  The
Defendants argue that the Plaintiff's equal protection claim
should be dismissed under Fed. R. Civ. P. 12(b)(6).

A plaintiff can bring an equal protection claim as a "class of one" under <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). The Third Circuit has explained that to state a claim as a "class of one" under <u>Olech</u>, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 243 (3d Cir. 2008). But <u>Olech</u> does not require that a plaintiff "identify in the complaint specific instances where others have been treated differently for the purposes of equal protection." <u>Id.</u> at 245.

Regardless of whether the Plaintiff has sufficiently pleaded that he was intentionally treated differently from other similarly situated individuals, the Defendants have shown a rational basis for any such differential treatment. Defendants argue that any preclusion of inmates with Hepatitis C from working in food service is reasonably related to legitimate penological interests, and therefore justified under <u>Turner v. Safley</u>, 482 U.S. 78 (1987). (Mem. of Law in Supp. of Mot. to Dismiss, at 9-11, Doc. No. 19). If the preclusion is justified under <u>Turner v. Safley</u>, there would be a rational basis for such action and the Plaintiff would fail to state a "class of one" equal protection claim.

The Court in <u>Turner</u> listed four factors that are relevant to

7

determining the reasonableness of a prison regulation:

> (1) there must be a 'valid, rational connection' between the prison regulation and the legitimate, neutral governmental interest put forward to justify it (the 'First Turner Factor'); (2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at *de minimis* cost to valid penological objectives (Turner factors 2-4 are the 'Other Turner Factors').

Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012). The Third Circuit has developed a two-step analysis for determining whether a prison's regulation is reasonably related to a legitimate penological interest under Turner. Id. The prison has the burden of proving the first Turner factor; if the prison meets this burden, the Court considers the other Turner factors. Id. The "ultimate burden of persuasion with regard to the reasonableness of a regulation" is on the inmate. Id.

The Third Circuit has opined on the evidentiary basis necessary to establish a connection between the prison regulation and the governmental interest that justifies it. The Third Circuit has explained that "the connection may be a matter of common sense in certain instances, such that a ruling on this issue based only on the pleadings may be appropriate." Wolf v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002). However, in other situations, "the connection is not so apparent and does require factual development." Id. Whether the connection can be founded on common sense or requires an evidentiary basis "will depend on

the nature of the right, the nature of the interest asserted, the nature of the prohibition, and the obviousness of its connection to the proffered interest." Id. at 308-09.

In the present case, the County Defendants have put forward a reason to justify the regulation keeping prisoners with Hepatitis C from working as food service workers.[2]  The County Defendants explain that although Hepatitis C is not transmitted by the type of casual contact that a food handler would have, other inmates might fear that Hepatitis C-positive food handlers will do things to their food that puts them in danger of contracting the disease.  (Mem. of Law in Supp. of Mot. to Dismiss, at 10-11, Doc. No. 19).  Further, the inmates will then want these handlers removed from food service, and if they do not receive assurances that the infected handlers are removed, there might be violent actions against infected inmates, inmates the others perceive as infected, or the staff that permits this perceived risk.  (Id.).

The Court finds that there is a common sense, rational connection between keeping prisoners infected with Hepatitis C from being food handlers and the interest that the County

_____

[2] It is unclear whether the prison in fact had such a policy or regulation.  The Plaintiff has only stated that he was denied employment in the kitchens and was allegedly told that the reason was his Hepatitis C.  But the Plaintiff has sought to amend his Complaint to allege such a policy. (Doc. No. 21).  For the sake of resolving this Motion to Dismiss, the Court will accept the allegation that the prison had a policy or regulation regarding infected inmates and food service work.

Defendants have put forward.  While scientific evidence indicates that Hepatitis C cannot be transmitted through casual contact with food, many people remain ignorant of how such a disease is transmitted.  The explanation that the County Defendants have offered is based on a threat to security and order due to inmates' fear of transmission of Hepatitis C and their actions based on this fear.  See Farmer v. Moritsugu, 742 F. Supp. 525, 527-28 (W.D. Wis. 1990) (finding that similar concerns for safety and order justified a policy preventing HIV-positive inmates from working in food service or the hospital).  The interest in avoiding such a threat to safety is clearly related to the regulation at issue; furthermore, the infected inmates are not prevented from working altogether, but only from working in one specific area.  Therefore, the prison has carried its burden in demonstrating the first Turner factor.

The other Turner factors suggest that the regulation at issue is reasonable.  The inmate has other opportunities to work while at the Berks County Prison aside from employment in food service.  Allowing Hepatitis C-infected inmates to work in food service would require the prison to subject itself to the safety concerns outlined above, or engage in costly and questionably effective educational programs to inform the inmates how such diseases are transmitted.  The Court recognizes that other prisons permit Hepatitis C-infected prisoners to work in food

10

service; however, that alone does not make the regulation in
Berks County Prison unreasonable.  Instead, it merely means that
Berks County Prison has decided that given its resources and the
prison population that it houses, it is better to keep infected
prisoners from handling food to maintain order in the prison.

The Court therefore concludes that the prison action at
issue here is reasonably related to legitimate, penological
interests.  Therefore, there is a rational basis for the prison
action and the Plaintiff has failed to state a claim as a "class
of one" under the Equal Protection Clause.  Even drawing all
reasonable inferences in the Plaintiff's favor, his allegations
fail to state a claim as a matter of law.  Accordingly, the Court
dismisses the Plaintiff's claims under the Equal Protection
Clause against all Defendants.

C.  Plaintiff's Claims Under the ADA

The Plaintiff seeks compensatory damages for a violation of
his rights under the ADA.  (Compl., at 5, Doc. No. 1).  At the
outset, the Court notes that although the Complaint appears to
seek damages under the ADA from all Defendants, the Medical
Defendants seek dismissal because they are not public entities
under Title II of the ADA.  (Br. in Supp. of Medical Defs.' Mot.
to Dismiss, at 4, Doc. No. 17).  The Plaintiff states that he did
not bring a claim under the ADA against the Medical Defendants,
as they are not public entities under the ADA, and agrees that

11

this claim against them should be dismissed.  (Mot. in Opp. to Defs.' Mot. to Dismiss, at 4, Doc. No. 27).  Therefore, the Court dismisses the ADA claims against the Medical Defendants.

The County Defendants seek dismissal of the Plaintiff's ADA claims for several reasons.  First, they argue that the Plaintiff has not sufficiently alleged that he has a disability under the ADA, because he has not stated that Hepatitis C limits a major life activity.  (Mem. of Law in Supp. of Mot. to Dismiss, at 12-13, Doc. No. 19).  Second, even if the Plaintiff is disabled under the ADA, they argue, prison officials have the discretion to determine the reasonableness of accommodation requests in light of penological needs, even if the Turner standard does not apply to statutory rights such as those under the ADA.  (Id. at 13-15).  However, at this time, the Court does not find it necessary to analyze either of these arguments, as the Plaintiff has not pled that the Defendants intentionally discriminated against him as required for compensatory damages under the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The provisions under Title II of the ADA are applicable to prisoners confined in state correctional institutions.  Pa.

Dept. of Corr. v. Yeskey, 524 U.S. 206, 212 (1998).  To state a claim under Title II of the ADA, a plaintiff must plead that (1) she has a disability; (2) she was otherwise qualified to participate in the program; and (3) she was denied the benefits of the program or otherwise subjected to discrimination because of her disability.  Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).  The definition of disability under the ADA includes someone who is "regarded as" having a disability.  42 U.S.C. § 12102(1)(C).

The Third Circuit has not yet spoken on the issue of compensatory damages under Title II of the ADA; however, other courts of appeals and district courts within the Third Circuit have held that compensatory damages are unavailable absent a showing of intentional discrimination.  See Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003) Delano-Pyle v. Victoria Cnty., 302 F.3d 567, 574 (5th Cir. 2002); Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 115 (2d Cir. 2001); Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001); see also A.G. v. Lower Merion Sch. Dist., 11-5025, 2012 WL 4473244 (E.D. Pa. Sept. 28, 2012); McCree v. SEPTA, 07-4908, 2009 WL 166660 (E.D. Pa. Jan. 22, 2009).

The ADA was modeled on the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Supreme Court has made clear that the

13

remedies available under the two are "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." Barnes v. Gorman, 536 U.S. 181, 185 (2002).  The Supreme Court has held that compensatory damages should not be awarded in Title VI cases unless intentional discrimination is shown.  Alexander v. Sandoval, 532 U.S. 275, 282-83 (2001); Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 607 (1983).

Courts have interpreted the requirement to show intentional discrimination differently; some have required discriminatory animus, while others have required only deliberate indifference. See, e.g., T.W. ex rel. Wilson v. School Bd. Of Seminole Cnty., Fla., 610 F.3d 558, 603-04 (11th Cir. 2010) (requiring discriminatory animus); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009) (requiring a showing of deliberate indifference).  This Court need not decide whether mere deliberate indifference or the more stringent discriminatory animus is required because the Plaintiff has not pled any level of intentional discrimination on the part of the County Defendants.  Therefore, the Complaint fails to state a claim for compensatory damages under the ADA and the Court grants the County Defendants' Motion to Dismiss.[3]

_____

[3] Under the facts alleged in the Complaint, it seems unlikely that the Plaintiff will be able to prove that the County Defendants acted with deliberate indifference.  However, the Court will allow the Plaintiff the opportunity to amend the complaint and assert intentional discrimination and

## IV.   CONCLUSION

For the foregoing reasons, the Court grants the County Defendants' Motion to Dismiss and the Medical Defendants' Motion to Dismiss.  The Plaintiff has leave to amend the Complaint to properly assert intentional discrimination for a compensatory damages claim under the ADA.  The remainder of the Plaintiff's claims are dismissed with prejudice, as the Plaintiff could not state a claim even with the Court's leave to amend.  A separate order follows.

---

the facts to support such a claim, if the Plaintiff can do so.

1