**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RODNEY HONTZ, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 12-cv-2663 |
| | : | |
| BERKS COUNTY PRISON, ET AL., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**JOYNER, J.**                                    **MARCH 20, 2014**

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 45) and Defendants' Response in opposition thereto (Doc. No. 47); as well as Defendants' Motion for Summary Judgment (Doc. No. 46), Plaintiffs' Response in opposition thereto (Doc. No. 50), Plaintiffs' Statement of Disputed Factual Issues (Doc. No. 49), Defendants' Response in Support of Motion for Summary Judgment (Doc. No. 52) and Plaintiff's Reply Thereto (Doc. No. 54).

For the reasons outlined herein, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment. Plaintiff's claim against Defendants is DISMISSED without prejudice.

**I.       BACKGROUND**

Plaintiff Rodney Hontz, a currently-incarcerated inmate, brings a suit pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). The undisputed facts are as follows:

Mr. Hontz entered the Berks County Prison on or about March 18, 2010. (Am. Compl., Doc. No. 32 at 3). At that time, he was medically screened by personnel employed by PrimeCare Medical, Inc., a privately owned correctional healthcare company contracted by Berks County Prison. (Deposition of Rodney Hontz at 25-26). At the time of the evaluation, Mr. Hontz had previously attempted suicide, had a history of mental health issues, and was positive for Hepatitis C. Id. at 26-27. He was placed in close monitoring with full suicide precautions. Id.

On April 1, 2010, Mr. Hontz was released from medical segregation and moved to the general population with a maximum custody level classification. Id. at 29-30. On or about May 4, 2010, Mr. Hontz's classification level was downgraded to medium. Id. at 32-33.

The Berks County Prison operates a Jail Work Program providing employment opportunities to eligible inmates. (Affidavit of Christa Parrish at ¶ 6). According to the Berks County Prison System Standard Operating Procedures, "[m]edium inmates are eligible for most institutional jobs and programs inside the secure perimeter of the jail." (Berks County Jail System Standard Operating Procedures at 4). Inmates interested in the Work Program are required to accept any job offered to them, or else forego participation in the program. Parrish Aff. ¶ 10. If an inmate is cleared for employment, he or she is placed on a

2

waitlist for an institutional work assignment. Id. ¶ 9.

Defendants explain that Primecare is solely responsible for determining the medical requirements and qualifications for any job that inmates apply for, and also has sole authority to determine whether an inmate is medically eligible for institutional work while incarcerated at Berks County Prison. Id. ¶ 5. Defendants assert that, on or about March 19, 2010, Lynn Leppo, an Administrative Assistant with PrimeCare Medical, Inc., determined that Mr. Hontz was not medically cleared for institutional work, the Community Reentry Center ("CRC"), or outside work. (Affidavit of Lynn Leppo at ¶ 7). She made this determination "due to [Mr. Hontz's] detoxification status and mental health condition." Id. ¶ 8.

On or about May 5, 2010, Mr. Hontz submitted an Inmate Communication Form seeking employment as a library law clerk. (Pl. Mot. For Summary Judgment at Ex. D). On May 6, 2010, he submitted another form seeking employment in the Prison's kitchen. Id. at Ex. E. In response to these work requests, the Prison placed Mr. Hontz on a waiting list for a library job, and advised him that his interest in the kitchen job was known. Id. at Exs. J, K.

The parties have divergent accounts of what happened next. Defendants aver that Ms. Leppo cleared Mr. Hontz for institutional work, the CRC, and outside work on May 11, 2010.

(Leppo Aff. ¶ 8). However, Primecare also determined that Mr. Hontz was still not medically cleared for work in food service "due to his mental health condition and/or because Mr. Hontz was hepatitis C positive." Id. ¶ 9. Ms. Leppo also avers that "[u]nder PrimeCare Medical, Inc.'s policies, either Mr. Hontz's detoxification status or his mental health condition alone could medically disqualify Mr. Hontz from working in food service, even if Mr. Hontz was not hepatitis C positive." Id. ¶ 10. On or about June 25, 2010, the Prison advised Mr. Hontz that he was denied clearance to work in the Prison's kitchen. (Def. Mot. For Summary Judgment at Ex. P; Pl. Mot. for Summary Judgment at Ex. F).

Mr. Hontz agrees that he received a response stating that he was denied clearance for employment in the kitchen as of May 11, 2010. (Pl. Mot. For Summary Judgment at Ex. F). However, the response did not state a reason for the denial, and on July 7, 2010 he submitted an Inmate Communication Form requesting the reason for the denial. Id. at Ex. G. He wrote, "This is in reference to me being denied clearance for working in the kitchen as of 5/11/10, I am inquiring the reason for this denial?" Id. On July 9, 2010, Mr. Hontz was visited by a nurse from Primecare, who showed him a medical form that listed Mr. Hontz as having the Hepatitis C virus. (Def. Mot. for Summary Judgment at Ex. A, Deposition of Rodney Hontz, at 54-57). She explained that his positive status for Hepatitis C was the reason that he could not

4

work in the prison kitchen. Id. The nurse then signed the Inmate
Communication Form and gave Mr. Hontz a copy. (Pl. Mot. for
Summary Judgment at Ex. G). The response to the Inmate
Communication Form states, "[e]xplained reason to inmate on
7/9/10," and contains a signature in the bottom right hand
corner. Id. Mr. Hontz does not remember the nurse's name, but
remembers her as being thin, petite, with long black hair. (Hontz
Dep. at 55-56).

Defendants dispute that Mr. Hontz was denied clearance
solely due to his Hepatitis C-positive status. Christa Parish, a
Treatment Supervisor at the Berks County Prison, affirms that
"[a]t no time did Berks County Jail or any of its administrators,
supervisors or employees establish a policy that inmates or
detainees with hepatitis C are disqualified for any employment
position." (Affidavit of Christa Parish at ¶ 4).

On July 20, 2010, Mr. Hontz was transferred back to state
custody. (Hontz Dep. at 50). He had been incarcerated at Berks
County Prison for approximately four months. Id. Ms. Parish
states that "no institutional work assignment became available
for Mr. Hontz after he became eligible for institutional work . .
. but before he was transferred from Berks County Jail on July
20, 2010, because his name did not rise to the top of the
waitlists for these jobs." (Parrish Aff. at ¶ 13). She also
believes that, had Mr. Hontz been cleared for work in the

kitchen, his name would not have risen to the top of the waitlist prior to his transfer out of Berks County Prison. Id. ¶ 14.

After his transfer to SCI-Frackville, Mr. Hontz was cleared to work in SCI-Frackville's kitchen. SCI-Frackville has a policy stating that Hepatitis C-positive inmates are not contagious to others, and are cleared to work in food services. (Pl. Mot. for Summary Judgment at Ex. H). This policy and subsequent research alerted Mr. Hontz that his rights may have been previously violated at Berks County Prison, and prompted Mr. Hontz to file his present lawsuit.

Berks County Prison maintains rules, policies, procedures and disciplinary codes applicable to inmates, including a grievance and appeal process. (Hontz. Dep. at 52). Mr. Hontz was made aware of how the grievance process worked by the Berks County Prison Inmate Handbook ("Handbook"). Id. Per the Handbook, "[t]he grievance process may be used by any inmate . . ." (Def. Ex. I at 32), but warns that "NOT EVERY COMPLAINT IS A GRIEVANCE! FOLLOW THE LISTED GUIDELINES!" Id. The procedure laid out in the Handbook is as follows:

> Most routine housing unit and treatment matters or questions can be handled by speaking with the housing unit officer or treatment staff. You may submit a written request (using an Inmate Communication Form) to staff other than those assigned to work directly in your housing unit. A member of staff will respond to your request or forward it to the appropriate staff member for a response. After a response has been given, a

> copy of your request form will be returned to
> you. If you feel a significant complaint has
> not been resolved by this process, you may
> file a grievance. <u>Id</u>. at 31.

The Handbook further provides that written grievances must be filed within 30 days "after a potentially grievable event has occurred." <u>Id</u>. at 33. The grievance should "be placed in the inmate communication mail box on the housing unit and will be forwarded to the constituent services officer." <u>Id</u>. The grievance will typically be returned within 15 days, and may be appealed to the warden within 15 days of the issuance of a decision. <u>Id</u>. The Handbook does not mention whether the grievance process is available to inmates discharged from or transferred out of BCP, or how post-transfer grievances are to be filed. <u>See generally id</u>.

By way of sworn affidavit of Janine Quigley, current Acting Warden of BCP, Defendants also represent that the grievance procedure is not limited to inmates currently incarcerated at Berks County Prison, and may be used by individuals who have been discharged or transferred from the prison. (Affidavit of Janine L. Quigley at ¶¶ 5(d)-6). Ms. Quigley affirms that Berks County Prison has received grievances from inmates after they have been discharged or transferred out of Berks County Jail. <u>Id</u>. ¶ 6.

Though Mr. Hontz did fill out an Inmate Communication Form[1] to request the reason for his denial of clearance for work in food service, he did not submit an Inmate Grievance Form regarding the denial. (Hontz dep. 52-53; 56-57; 59-60). Upon a review of Mr. Hontz's records and inmate file, Mr. Wagner, former Warden of the Berks County Prison, affirms that although Mr. Hontz filed five separate grievances during his time at Berks County, none of them involved his security classifications or medical qualifications regarding institutional work assignments. (Affidavit of George Wagner ¶ 5).

## II.        STANDARD OF REVIEW

In deciding a motion for summary judgment under Rule 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal citation omitted).  Indeed, Rule 56(c) provides that summary judgment is properly rendered:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in

---

[1] In his deposition, Mr. Hontz states that he is not sure whether his request for the reason for his denial was simply a communication, or a grievance. (Hontz Dep. 59-60). However, Mr. Hontz's filings bear out that the request was made on an Inmate Communication Form. (Pl. Mot. for Summary Judgment at Ex. G). Mr. Hontz has not provided the Court with a copy of any Grievance Form that he filled out documenting his denial.

character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 125-26 (3d Cir. 1994); Oritani Savings & Loan Assn. v. Fidelity & Deposit Co. of Md., 989 F.2d 635, 638 (3d Cir. 1993). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex Corp. v. Catrett, supra, the Supreme Court held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (internal quotation omitted). The nonmoving party must support each essential element by "citing to particular parts of materials in the record." Fed. R. Civ. P.

9

56(c)(1)(A). This does not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Celotex, 477 U.S. at 324. Rather, Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the required showing that a genuine issue of material fact exists. Id.

The summary judgment standard does not change when parties have filed cross-motions for summary judgment. Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). The Court "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. Of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)). If review of cross-motions reveals no genuine issue of material fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

III.      **ANALYSIS**

Plaintiff Rodney Hontz brings a claim against the Defendants for violation of his rights under the Title II of the ADA. To prevail, Mr. Hontz must prove that (1) he has a disability, (2) he was otherwise qualified to participate in the program, and (3) he was denied the benefits of the program or otherwise subjected to discrimination because of his disability. Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). Additionally, as an incarcerated prisoner, Mr. Hontz is required to prove that he exhausted the administrative remedies available to him prior to bringing suit in federal court. 42 U.S.C. § 1997e. Because the Court finds that Mr. Hontz has failed to satisfy this exhaustion requirement, it does not reach the merits of Mr. Hontz's claim under the ADA.

**A.    Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust a prison facility's administrative remedies before bringing a suit regarding prison conditions pursuant to 42 U.S.C. § 1983. See 42 U.S.C. § 1997e *et seq.* The goals of this requirement are to return control of the inmate grievance process to prison administrators; to encourage the development of an administrative record and perhaps also settlements within the inmate grievance process; and to reduce the burden on federal courts by discouraging frivolous lawsuits. Spruill v. Gillis, 372

11

F.3d 218, 230 (3d Cir. 2004).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedure rules . . ." Woodford v. Ngo, 548 U.S. 81, 90-1 (2006). Failure to substantially comply with the exhaustion requirement results in a procedural default of the inmate's claim. Spruill, 372 F.3d at 227-32. The exhaustion requirement is mandatory, and the Court cannot exercise discretion to waive it. Woodford, 548 U.S. at 85. Failure to exhaust administrative remedies is an affirmative defense under the PLRA, to be pled and proven by the defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

However, "[t]he PLRA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available.'" Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002)(citing 42 U.S.C. § 1997e(a)). "'Available' means 'capable of use; at hand.'" Id. at 113 (internal citations omitted). The availability of administrative remedies to a prisoner is a question of law reserved for the Court, even if that determination requires the resolution of disputed facts. Small v. Camden County, 728 F.3d 265, 269 (3d Cir. 2013)(citing Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010)); Daniels v. Rosenberger, 386 F. App'x. 27, 29 (3d Cir. 2010).

The parties agree that the exhaustion requirement applies to Mr. Hontz's case, and that Berks County Prison maintains an

inmate communication and grievance system. Defendants argue that Mr. Hontz failed to avail himself of any of the remedies prescribed in the Handbook following his alleged exclusion from a job in the kitchen. Mr. Hontz responds that his submission of an Inmate Communication Form requesting explanation of the reason for his denial constituted a grievance. In the alternative, Mr. Hontz argues that administrative remedies were not available to him, for two reasons: first, he was not aware that his civil rights had been violated by Berks County Prison until he was transferred out of it; and second, that his transfer out of Berks County Prison made the grievance process unavailable.

First, the Court finds Mr. Hontz's submission of an Inmate Communication Form on July 7, 2010, by itself, to be inadequate to exhaust his administrative remedies. Though Defendants admit that a grievance may at times be submitted on an Inmate Communication Form, Mr. Hontz did not complete the administrative process available to him.[2] After receiving a response to his Communication, Mr. Hontz did not complete the further steps outlined in the Handbook: he did not file a grievance in relation to the denial, nor did he appeal or contest the explanation in any other way. Thus, the submission of the Inmate Communication Form did not satisfy the PLRA's exhaustion requirement.

---

[2] Defendants also argue, and the Court agrees, that Mr. Hontz's query on the Inmate Communication Form is phrased in the form of a question that can be resolved with an answer, and is not styled as a grievance requiring investigation. <u>See</u> (Pl. Mot. for Summary Judgment at Ex. G).

13

Second, the Court finds that Mr. Hontz's ignorance of the fact that his civil rights may have been violated is no excuse for not pursuing an administrative grievance. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). Mr. Hontz knew of the underlying injury, the denial of kitchen employment, when he received notice on July 9, 2010. The time period for submitting a grievance began on that date. Mr. Hontz's lack of knowledge of the applicable law cannot circumvent the PLRA exhaustion requirement.

Third, Mr. Hontz made no attempt to exhaust his administrative remedies even upon learning, after his transfer, that BCP may have violated his civil rights. Based upon Third Circuit caselaw and evidentiary submissions by the parties, the Court finds that Mr. Hontz's transfer from Berks County Prison to SCI-Frackville does not excuse his lack of exhaustion because administrative remedies remained available to him subsequent to the transfer.

Courts have reached differing conclusions as to whether transfer from one correctional facility to another makes administrative remedies unavailable to an inmate. Some have held that, when the relevant inmate grievance procedures make no provision for the submission of complaints by prisoners no longer

14

detained at a certain facility, administrative remedies are
unavailable to a transferred inmate. See Braswell v. Corrections
Corp. Of America, 419 Fed. Appx. 622, 626 (6th Cir. 2011)(issue
of material fact existed as to whether plaintiff remained subject
to detention facility's grievance system once he was transferred
to special needs facility); Hill v. Chalanor, 128 Fed. App'x.
187, 188 (2d Cir. 2005)(issue of material fact existed as to what
remedy was available to plaintiff after transfer to new
facility); Bradley v. Washington, 441 F.Supp.2d 97, 102-3 (D.D.C.
2006)(transfer of inmate from jail to federal system rendered
unavailable administrative review of inmate's claims). In
contrast, other courts have held that an inmate's transfer leaves
intact his or her access to administrative remedies, and thus the
inmate retains his or her obligation to exhaust those remedies.
See, e.g., Napier v. Laurel County, Ky., 636 F.3d 218, 223 (6th
Cir. 2011)("inherent in [plaintiff's] argument is the idea that
where the facility has not expressly provided for inter-facility
grievances, the remedy is categorically unavailable. We reject
this proposition"); Flournoy v. Schomig, 152 Fed. Appx. 535, 537
(7th Cir. 2005)(non-precedential)(inmate must exhaust state
procedures for submitting a grievance concerning events that
arose at a different institution); Medina-Claudio v. Rodriguez-
Mateo, 292 F.3d 31, 35 (1st Cir. 2002)("[t]he fact that
[plaintiff] happened to be a prisoner in various locations, and

under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit."); Soto v. Belcher, 339 F.Supp.2d 592, 595 (S.D.N.Y. 2004).

In the present case, Defendants have submitted the affidavit of Jane L. Quigley, the Acting Warden of the Berks County Prison. She affirms that an inmate's right to submit a grievance and/or appeal of a grievance decision is not terminated when an inmate is transferred out of BCP. (Quigley Aff. at ¶ 5(d)). In fact, BCP has received grievances from inmates after they have been discharged or transferred out of Berks County Jail. Id. at ¶ 6. Mr. Hontz opposes this evidence, arguing that Defendants have provided no information regarding how and by what process inmates transferred out of BCP may submit grievances; that the BCP Handbook, the sole source of information regarding grievances, contains no information on the post-transfer grievance process; and that Defendants have not proven[3] that BCP has in fact received grievances after being discharged from or transferred out of BCP.

The Court concludes, on the basis of the evidence submitted by Defendants, that administrative remedies were available to Mr. Hontz after his transfer out of BCP. The Third Circuit has firmly established that the availability of administrative remedies is a question of law for the Court, even if it necessitates resolution

---

[3] Mr. Hontz's contention to the contrary notwithstanding, the Quigley affidavit is the type of evidence that can be used to support a disputed fact. See Fed. R. Civ. P. 56(c)(1)(A), 56(c)(4).

of disputed facts.[4] <u>Small v. Camden County</u>, 728 F.3d 265, 269 (3d Cir. 2013)(citing <u>Drippe v. Tobelinski</u>, 604 F.3d 778, 781 (3d Cir. 2010)). In resolving the factual disputes before it, the Court is guided by the Third Circuit's decision in <u>Williamson v. Wexford Health Sources, Inc.</u>, 131 Fed. App'x. 888 (3d Cir. 2005)(non-precedential). Williamson brought a § 1983 action alleging that he suffered seizures while temporarily confined at SCI-Pittsburgh because he was not given prescribed medication. <u>Id</u>. at 889. He submitted an initial grievance at SCI-Pittsburgh, but, by the time the Grievance Coordinator made a decision, Williamson had been transferred back to SCI-Houtzdale and was receiving his medication. <u>Id</u>. at 890. Williamson did not appeal the Grievance Coordinator's decision. <u>Id</u>. The Third Circuit explained that "§ 1977e(a), as amended by the PLRA, completely precludes a futility exception to its mandatory exhaustion requirement," <u>id</u>. (citing <u>Nyhuis v. Reno</u>, 204 F.3d 65, 69 n.4 (3d Cir. 2000)), and held that Williamson was required to present his claim at all levels of the administrative process despite his transfer and despite the fact that he later received the medicine he needed. <u>Id</u>.

The <u>Williamson</u> case has been cited by district courts within

---

[4] The Court thus cannot follow the examples of the Sixth and Second Circuits, which have found that genuine issues of material fact regarding the availability of administrative remedies may preclude summary judgment in certain cases. <u>See</u> <u>Braswell v. Corrections Corp. Of America,</u> 419 Fed. Appx. 622, 626 (6th Cir. 2011); <u>Hill v. Chalanor</u>, 128 Fed. App'x. 187, 188 (2d Cir. 2005).

the Third Circuit for the proposition that a transfer to another
facility does not excuse the PLRA's exhaustion requirement. <u>See</u>,
<u>e.g.</u>, <u>Dade v. Gaudenzia DRC, Inc.</u>, CIV.A. 13-1381, 2014 WL 47766
(E.D. Pa. 2014); <u>Jackson v. Gandy</u>, 877 F.Supp.2d 159 (D.N.J.
2012); <u>Ball v. Bower</u>, 1:10-CV-2561, 2011 WL 6782621 (M.D. Pa.
2011); <u>In re Bayside Prison Litigation</u>, CIV.97-5127 (RBK), 2008
WL 2387324 (D.N.J. 2008)(defendants' evidence showed that
grievance procedures at both prisons plaintiff was transferred
from and to would have allowed officials to take action in
response to a complaint).Against the backdrop of this Third
Circuit caselaw, the Court cannot conclude that the BCP
Handbook's lack of provision for post-transfer grievance
procedures means that the procedures were not 'capable of use'
and excuses Mr. Hontz's exhaustion responsibilities.[5] The Court
also notes that Mr. Hontz has not provided evidence contradicting
the Quigley affidavit's assertion that BCP has received
grievances from inmates post-transfer; he merely questions its
veracity. Without evidence to the contrary, the Court has no
reason to find that BCP has not received grievances from its
former inmates.

The PLRA "attempts to eliminate unwarranted federal-court

---

[5] The Court notes that Mr. Hontz's questions, including "if a person who
is not confined in the BCP wanted to submit a grievance, how would the person
submit it?" are logical. (Pl. Resp. to Def. Mot. In Support of Summary
Judgment at 4). However, these questions alone do not undercut the Quigley
affidavit's assertion that non-BCP inmates have submitted grievances, thus
making the remedies "capable of use."

interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93 (2006)(citing Porter v. Nussle, 534 U.S. 516, 525 (2002)). In accordance with this guidance from the U.S. Supreme Court and the reasoning of Williamson, the Court holds that Mr. Hontz has failed to properly exhaust his administrative remedies, and his transfer out of Berks County Prison is not a sufficient excuse for his failure to do so. Were Mr. Hontz able to show the Court that he had pursued any sort of administrative remedy upon learning that his civil rights may have been violated - for example, by submitting a grievance using SCI-Frackville's administrative system, asking a corrections officer at SCI-Frackville for information on how to proceed, or attempting to mail a grievance or complaint to Berks County Prison - the issue of exhaustion might be a closer question. Nor does Mr. Hontz contend that prison officials interfered with his access to administrative remedies.

Given the evidence before it, and the strict requirements of the PLRA, the Court must dismiss Mr. Hontz's claim without prejudice for failure to exhaust his administrative remedies under the PLRA. See Ahmed v. Sromovski, 103 F.Supp.2d 838, 844 (E.D. Pa. 2000)("[d]ismissal of a plaintiff's complaint without prejudice is appropriate when an plaintiff-inmate has failed to

exhaust his available administrative remedies before bringing an action under § 1983.").

## CONCLUSION

Mr. Hontz's claims against Defendants are DISMISSED without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).